IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NANCY WOODS, ) | |
| ) | |
|    Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:19-CV-01401-SRC |
| ) | |
| THE CIRCUIT ATTORNEY'S OFFICE ) | |
| OF THE CITY OF ST. LOUIS, et al. ) | |
| ) | |
|    Defendants. ) | |

**MOTION FOR A TELEPHONE CONFERENCE
REGARDING DISCOVERY DISPUTES DURING DEPOSITIONS**

     COMES NOW Plaintiff and requests a telephone conference or other briefing to address discovery disputes that arose during depositions in this case, which could not be resolved:

**A.    The Disputes**

This is an employment discrimination case in which Plaintiff alleges she was discriminated against on the basis of her race and age when she was fired as a paralegal in the Child Support Unit of the Circuit Attorney's Office (CAO) after working there for 28 1/2 years.  Plaintiff is Caucasian.  All of the individuals involved in the decision to fire her are African American.

1.    Defendants took the position that support staff employee, Wendy Steinhauser, and Investigator, Katrtina Neal, were represented by counsel for the Defendants, making communications with counsel before their depositions privileged.  See Exhibits 1 and 2, pp. 6-7. The party claiming the benefit of the attorney-client privilege "has the burden of establishing the right to invoke its protection."  *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985).  In *Upjohn Co. v. United States*, 449 U.S. 383, 394, 101 S. Ct. 677, 685, 66 L. Ed. 2d 584 (1981), the Supreme Court held that communications between an entity's nonmanagerial employees and counsel about matters within the scope of the employee's duties at the direction of corporate superiors when known by the employee to be for the purpose of the entity securing legal advice are privileged attorney-client communications.  Under these criteria, the communications with defense counsel were not privileged.  First, these communications were not made for the purpose of securing legal advice but to prepare witnesses for their depositions. The communications were not made in the scope of the employee's duties.  They took place because the employees were witnesses to certain events.  See *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1977).  In an employment case tried by this office, inquiry into communications between nonmanagerial employees and the entity's counsel in preparation for depositions revealed the pressure put on these employees to tow the company line.  While Plaintiff is not claiming that this occurred, it shows why all communications with employees of an entity and that entity's

attorney should not be protected by the attorney-client privilege.

2.      Defendants took the position that communications employees had with Michael Warrick, Chief of Staff, involving Plaintiff's termination and/or information provided to him to prepare the Position Statement Defendants sent to the EEOC are privileged attorney-client communications.  See Exhibits 2, pp.13-14 & 3.  Defendants take the same position regarding communications subordinates had with Gardner about other employees separated from the Circuit Attorney's Office, even though they did not claim that similar communications with Gardner about Plaintiff were privileged.  See Exhibit 4.  Simply because certain Defendants or those communicating with them are attorneys does not mean that these communications are privileged.  "In order for the privilege to be applicable, the parties to the communication in question must bear the relationship of attorney and client. Moreover, the attorney must have been engaged or consulted by the client for the purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not in some other capacity. A communication is not privileged simply because it is made by or to a person who happens to be a lawyer." *Diversified Indus., Inc.,* 572 F.2d at 602.  Additionally, voluntary disclosure of a confidential communication expressly waives the privilege. *United States v. Workman,* 138 F.3d 1261, 1263 (8th Cir.1998). Here Defendants disclosed the communications about Plaintiff to the EEOC.  The scope of the waiver is not limited to the communications disclosed but also applies to "other communications relating to the same subject matter." *John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL—CIO & CLC,* 913 F.2d 544, 556 (8th Cir.1990).

3.      Defendants took the position that communications they had with each other about the lawsuit after they received a copy of it were privileged and could not be disclosed.  Specifically, Defendant Simmons refused to discuss communications she had with Defendants Warrick and Gardner about the lawsuit right after it was served.  See Exhibit 5.  Once again, communications with someone who happens to be a lawyer are not privileged *per se*.  Privileged communications must be made by a client (or someone seeking to become one) to a person acting as a lawyer for the purpose of securing an opinion of law, legal services, assistance in a legal proceeding and not for the purpose of committing a tort. *Diversified Indus,* 572 F.2d 596, 601-602.  There is no evidence that these communications were made for any of the purposes that would support the privilege.

4.      Consistent with this Court's Order, during the telephone conference on March 6, 2020 when Defendant Gardner's deposition was taken, Plaintiff asked whether Gardner believed William Tisaby made false statements during his deposition as she sat there.  Defendant Gardner responded that she did not believe he made false statements but believed he "was mistaken." When Plaintiff asked what Mr. Tisaby was mistaken about and what efforts Defendant Gardner made to correct his mistakes, she was instructed by counsel not to answer the questions because beyond what the court approved.  See Exhibit 6, pp. 283-284.  These are reasonable follow-up questions to Gardner's testimony, that go to the issue of Defendant Gardner's credibility, and she should be required to answer them.  Pursuant to F.R.E. 608(b), on cross-examination a court may allow inquiry into specific instances of a witness' conduct if probative to the witness' character for truthfulness or untruthfulness.  At the discovery stage, there is no need to balance the danger of unfair prejudice against the relevance of credibility, and therefore, the questions should be

answered.

5.     Plaintiff asked Defendant Gardner how many total officers are on the exclusionary list, how many are Caucasian and African American, how she determines whether an officer can testify in a case, whether she has explained to the general public the criteria for putting officers on the exclusionary list, and whether they are put on this list for being racist.  She refused to answer all of these questions.  See Exhibit 6, pp. 285-287.  The objection made are not valid objections, and even if they were, the lawsuit was dismissed without prejudice on February 13, 2019 and never refiled and Gardner discussed the criteria with the public.  See Exhibits 7 & 8  Plaintiff did not request the names of the officers on the exclusionary list.  Whether all or a substantial majority of the officers on the exclusionary list are Caucasian is probative to the issue of Defendant Gardner's racial animus, or at least reasonably calculated to lead to the discovery of admissible evidence on this issue and proportional to the needs of this case.

6,     Finally, there will be evidence that Defendant Gardner forced an employee to retire under threat of termination because among other things, she heard a rumor that he had called her a racist.  Gardner testified that no one had ever called her a racist, so she did not know if a member of her team calling her a racist would be grounds for disciplinary action or termination.  Plaintiff inquired how Defendant Gardner would determine if someone is racist and she responded that she would not.  She also testified that she was unable to answer how she would determine whether race was a factor in an employment decision involving her office.  See Exhibit 9.  A question was asked and certified as to whether Gardner was accusing others of being racist towards her.  She was instructed not to answer the question, consistent with this Court's ruling.  Exhibit 6, p. 284.  Defendant Gardner should be ordered to answer this and other questions about her own lawsuit alleging a racist conspiracy against her because how racism and discrimination is identified and acted upon by Defendant Gardner is a central issue in this case.

    Respectfully submitted,

    PLEBAN & PETRUSKA LAW, LLC

by:     /s/ Lynette M. Petruska
    Lynette M. Petruska, MO Bar No. 41212
    lpetruska@plebanlaw.com
    2010 South Big Bend Blvd.
    St. Louis, MO 63117
    (314) 645-6666 - Telephone
    (314) 645-7376 - Facsimile
    Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served via the Court's ECF System this 24th day of March, 2020, upon all attorneys of record.

    /s/ Lynette M. Petruska